[Cite as *In re A.S.*, 2012-Ohio-5998.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.S.

C.A. No.    26452


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 09-11-0883

DECISION AND JOURNAL ENTRY

Dated: December 19, 2012

BELFANCE, Judge.

{¶1}    Appellant, Tiffany S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of the child's father, Alexander L. ("Father").  For the reasons that follow, this Court affirms.

I.

{¶2}    Mother and Father are the natural parents of A.S., born February 22, 2006. Although Mother has an older child, who is the child of another father, that child is not a party to this appeal.

{¶3}    On November 10, 2009, Summit County Children Services Board ("CSB") filed a complaint, alleging that A.S. was a neglected and dependent child because Mother was abusing drugs and alcohol and had untreated mental health problems.  Mother and A.S. lived with the maternal grandmother, with whom Mother had repeated domestic disputes in the presence of the child.  On numerous occasions, Mother's "out-of-control" behavior had required intervention by

the police and/or family members to protect the child. Mother had allegedly told then three-year-old A.S. that she was going to kill herself and he would never see her again.

{¶4} A.S. was later adjudicated a dependent child. He was initially allowed to remain with Mother in the home of the maternal grandmother, under an order of protective supervision by CSB. Mother was required to obtain substance abuse and mental health assessments and engage in any recommended treatment. She was diagnosed with bipolar disorder and anxiety and was prescribed psychiatric medication to help stabilize her moods. Although Mother briefly engaged in treatment, CSB later moved for a change of disposition because Mother had stopped taking her prescribed psychiatric medication and was again abusing prescription and illegal drugs. She allegedly had even hidden drugs and a hypodermic needle in the bedroom of one of her children. Mother continued to exhibit volatile and violent behavior in the presence of A.S. and had physically injured the grandmother.

{¶5} The trial court found that A.S. was in immediate danger and ordered that he be removed from Mother's custody and, following a dispositional hearing, placed him in the temporary custody of CSB. Because Father had requested custody of A.S. and had made substantial progress on the reunification requirements of the case plan, A.S. was placed in his home in April 2011.

{¶6} Each parent eventually moved for legal custody of A.S., and a hearing was held before a magistrate on their competing motions. Although CSB had initially supported shared parenting by the parents, by the time of the hearing, it supported Father's motion for sole legal custody. CSB concluded that Father had been providing A.S. with a suitable home for the past six months, but Mother had not adequately addressed her mental health or substance abuse problems. The magistrate granted Father's motion for legal custody, finding that such a

disposition was in the best interest of A.S. Mother objected to the magistrate's decision, but the trial court overruled her objection and ordered that A.S. be placed in Father's legal custody. Mother appeals and raises one assignment of error.

II.

## ASSIGNMENT OF ERROR

> THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING LEGAL CUSTODY OF THE CHILD TO FATHER, AS ITS DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WAS AN ABUSE OF DISCRETION, AND WAS CONTRARY TO THE BEST INTEREST OF THE MINOR CHILD.

{¶7} Mother argues that the trial court abused its discretion by placing A.S. in the legal custody of Father rather than in her legal custody. Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a non-parent is based solely on the best interest of the child. *In re D.R.*, 9th Dist. No. 21218, 2003-Ohio-2852, ¶ 17. *See also In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus (holding that an adjudication of abuse, dependency, or neglect is an implicit determination of the parent's unsuitability). "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision on the best interest of the child." *In re N.P.*, 9th Dist. No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶8} Furthermore, the juvenile court's disposition of legal custody to a relative is a less drastic disposition than permanent custody to a children services agency because it does not terminate parental rights but instead leaves intact their "residual parental rights, privileges, and responsibilities." *In re C.R.*, 2006-Ohio-1191, at paragraph one of the syllabus. The trial court's decision to grant or deny a motion for legal custody is within its sound discretion and will not be

reversed absent an abuse of discretion. *In re M.S.*, 9th Dist. No. 22158, 2005-Ohio-10, ¶ 11. An abuse of discretion implies that the trial court's attitude is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9}    Mother argues that A.S. should have been placed with her rather than with Father because she had remedied the problems that led to the removal of A.S. from her custody. Although the evidence established that Mother was making progress on the reunification goals of the case plan, she was not currently engaged in any counseling for either her mental health or substance abuse. She had been terminated from treatment at her previous provider because she did not attend on a consistent basis. Because Mother refused to sign releases from her service providers, it was unclear whether she was taking her psychiatric medication.

{¶10}  Additionally, Mother had been testing positive for opiates throughout this case. According to Mother, she had been prescribed pain medication. Even when Mother did substantiate that claim with proof of medical prescriptions, CSB was concerned that, because Mother was a former heroin addict, she was simply replacing that habit by taking prescribed opiates on an ongoing basis. Moreover, during the months preceding the hearing, Mother had been unable to prove that she had current prescriptions for the drugs that she was taking. Consequently, CSB remained concerned that Mother was not adequately addressing her mental health or substance abuse problems.

{¶11}  The evidence at the hearing also revealed that Mother was eight months pregnant with another child. The guardian ad litem testified that, after learning about the pregnancy, she was only further convinced that A.S. "needs to remain with his father." She explained that, by her observation, Mother was overwhelmed caring for one child and herself. She did not believe that Mother had the ability to care for an additional child.

{¶12} Father, on the other hand, did everything that he was required to do on the case plan. He attended first aid and parenting classes and maintained stable housing and employment. CSB never had any concerns about drug or alcohol abuse by Father or about his mental health. The caseworker explained that CSB fully supported Father's request for legal custody because A.S. had been doing well in Father's care for the past six months. A.S. was enrolled in school, had adjusted to Father's home and neighborhood, and had made many friends there. The caseworker shared her observations of the loving interaction between A.S. and Father in the home. She also had the opportunity to see A.S. interact with neighborhood friends who had come over to play. The guardian explained how well everyone in that home interacted together. She had no concerns about Father's ability to continue meeting all of the daily needs of A.S.

{¶13} Mother focuses much of her argument on appeal, as she did at the hearing, on her allegations that Father has not provided appropriate care for A.S. Specifically, she focuses on three incidents during which, while in Father's care, A.S. fell and knocked out a tooth, sustained a bruise on his leg, and developed ringworm. Mother believed that Father was responsible for the injuries and/or failed to seek appropriate treatment for the injuries and the ringworm. The evidence established, however, that Mother contacted CSB about her concerns and the agency investigated each incident. The caseworker testified that, after investigating each incident, the agency was satisfied that the child's injuries had been accidental and did not require medical treatment. For example, A.S. had knocked out a baby tooth when he fell while rocking back and forth in his chair at the dinner table. Father took him to a dentist, who confirmed that no harm had been done to his permanent tooth and no treatment was required.

{¶14} CSB also determined that father had treated A.S.'s ringworm appropriately. The caseworker confirmed that, although Father initially had not taken A.S. to a doctor to diagnose

and treat his ringworm, he had obtained an appropriate over-the-counter cream and was treating the ringworm prior to Mother raising her concerns and taking the child to a hospital emergency room.

{¶15} Given all of the evidence before the trial court, it was not unreasonable for it to conclude that it was in the best interest of A.S. to remain in Father's home. Consequently, it did not abuse its discretion by placing A.S. in Father's legal custody. The assignment of error is overruled.

### III.

{¶16} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

CARR, P. J.
DICKINSON, J.
CONCUR.

APPEARANCES:

LEONARD J. BREIDING, II, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

LINDA BENNETT, Guardian ad litem.